991 A.2d 1021 (2010)
SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Petitioner
v.
PUBLIC UTILITY COMMISSION, Respondent.
No. 1603 C.D. 2009
Commonwealth Court of Pennsylvania.
Argued February 8, 2010.
Decided March 30, 2010.
Mark D. Bradshaw, Harrisburg, for petitioner.
*1022 Michael L. Swindler, Asst. Counsel, Harrisburg, for respondent.
John H. Isom, Harrisburg, for intervenor, PPL Electric Utilities Corporation.
BEFORE: LEADBETTER, President Judge, McCULLOUGH, Judge, KELLEY, Senior Judge.
OPINION BY President Judge LEADBETTER.
The Southeastern Pennsylvania Transportation Authority (SEPTA) petitions for review of an order of the Pennsylvania Public Utility Commission (PUC) that approved the siting and construction of a seven mile long high-voltage power line in Bucks and Lehigh Counties by PPL Electric Utilities Corporation (PPL). The order authorized PPL to begin proceedings to exercise eminent domain over SEPTA's property, in order to secure the airspace necessary to run the power line over one of SEPTA's rail lines.[1] PPL has intervened in this appeal in support of the PUC order.
PPL filed its application for approval of siting and construction of a power line, called the "Coopersburg Line," with the PUC in February 2008. The application indicated the need to upgrade power transmission in the region, provided an in-depth analysis of three proposed routes for the new line, and concluded that the Coopersburg Line was the best route. Shortly afterwards, PPL filed an eminent domain application with the PUC, requesting authorization to exercise eminent domain over SEPTA's property for the Coopersburg Line. This application reiterated the case for the line, noted that it was necessary for the line to cross SEPTA tracks, and stated that PPL had made "substantial, good-faith efforts to purchase a right-of-way and easement . . . but has been unable to reach any agreement with" SEPTA. Reproduced Record (R.R.) at 288a. The PUC consolidated the eminent domain application with the siting application.
SEPTA promptly filed a protest to the consolidated application, arguing that PPL had no legal authority to condemn SEPTA property. PPL had two responses to SEPTA's argument. It first argued that the PUC was not the proper forum to dispute the lawfulness of the proposed condemnation, because under the statute governing the application process, Section 1511(c) of the Business Corporation Law of 1988, 15 Pa.C.S. § 1511(c), the "power of the public utility corporation to condemn the subject property . . . shall not be an issue in the commission proceedings." In the alternative, PPL asserted that it did in fact have the legal authority to condemn SEPTA property.
The case was heard before an Administrative Law Judge (ALJ). In February 2009, the ALJ issued an opinion, concluding that Section 1511(c) precluded consideration of whether PPL had the power to condemn SEPTA's property, and recommending that the PUC approve PPL's application in full. The PUC adopted the ALJ's recommendation and reasoning, leading to this appeal.
This case implicates three potential issues, only two of which, the first and the third, are raised by SEPTA. These are: (1) whether the PUC correctly determined that building the Coopersburg Line is "necessary or proper," (2) whether the PUC correctly refused to reach the merits of SEPTA's argument that PPL has no power to condemn, and (3) whether PPL *1023 has the authority to condemn SEPTA property. Because of our resolution of the first two issues, there is no need to address the third.
SEPTA argues that the PUC erred in granting the application because the use of eminent domain was not necessary or proper, as required by Section 1511(c). Section 1511 allows public utilities to use the power of eminent domain for projects in the public interest. Utilities exercise this power by filing an application in common pleas after they have received authorization from the PUC. 15 Pa.C.S. § 1511. Section 1511 defines the PUC's application process and requires an applicant to show that "the service to be furnished by the corporation through the exercise of those powers is necessary or proper for the service, accommodation, convenience or safety of the public." 15 Pa.C.S. § 1511(c) (emphasis added). SEPTA argues that, because they are willing to negotiate sale or lease of an easement, use of eminent domain is not necessary, and because PPL has no authority to use eminent domain against SEPTA, it is not proper.
This argument is based on a flawed interpretation of the statute. The plain language of Section 1511(c) requires the applicant to show that its proposed project is in the public interest, not that its proposed use of eminent domain is proper. See Pa. Power & Light Co. v. Pa. Pub. Util. Comm'n, 696 A.2d 248 (Pa.Cmwlth.1997) (discussion of necessary or proper). This interpretation is further bolstered by the fact, discussed in more detail below, that the PUC is expressly barred from considering the power of the utility to condemn. Since PPL's burden in front of the PUC was to show that the construction of the Coopersburg Line was necessary or proper, not to show that the use of eminent domain was necessary or proper, SEPTA's arguments are irrelevant. At no point in this case has SEPTA disputed any of PPL's evidence about need for the Coopersburg Line. Therefore, SEPTA cannot prevail on this claim.
The next issue posited by SEPTA is that it is immune from condemnation. The PUC, however, properly refused to decide the merits of this argument, citing Section 1511(c), the authority under which the PUC's order was issued. Section 1511(c) states that a public utility may begin the process of condemnation:
only after the Pennsylvania Public Utility Commission . . . has found and determined. . . that the service to be furnished by the corporation through the exercise of those powers is necessary or proper for the service, accommodation, convenience or safety of the public. The power of the public utility corporation to condemn the subject property or the procedure followed by it shall not be an issue in the commission proceedings held under this subsection. . . .
15 Pa.C.S. § 1511(c). Under this provision, the only role of the PUC is to consider if the project is necessary or proper for the benefit of the public, and it is expressly barred from considering the power of the utility to condemn. After the PUC authorizes a utility to exercise the power of eminent domain, a condemnation is far from final, as 15 Pa.C.S. § 1511(g) makes clear that before taking the land, the utility must prevail in a condemnation action at the Court of Common Pleas. As our Supreme Court held, in interpreting an earlier but substantially similar version of the statute: "Once there has been a determination by the PUC that the proposed service is necessary and proper, the issues of scope and validity and damages must be determined by a Court of Common Pleas exercising equity jurisdiction." Fairview Water Co. v. Pa. Pub. Util. Comm'n, 509 Pa. 384, 393, 502 A.2d 162, 167 (1985).
The legislature and our Supreme Court have made it very clear that a challenge to *1024 the authority of the utility to condemn is properly raised in proceedings before common pleas, not the PUC. The PUC, therefore, correctly refused to consider SEPTA's immunity argument. Because we find that the PUC was correct not to rule on SEPTA's argument that it is immune from condemnation, we decline to address it here. If PPL continues the condemnation process by filing an application in common pleas, SEPTA would, of course, have an opportunity to raise its argument there for full consideration on the merits. Fairview Water, 509 Pa. 384, 502 A.2d 162.
For all the foregoing reasons, we affirm.

ORDER
AND NOW, this 30th day of March, 2010, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is hereby AFFIRMED.
NOTES
[1] It should be noted that the PUC's order in this case did not actually authorize a taking of SEPTA's property. It merely authorized PPL to begin the process of condemnation, which must start with PPL filing an application with common pleas.