# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clean Air Council,                   :
Margaret M. deMarteleire, and      :
Michael S. Bomstein            :
                                  :
          v.                :    No. 1112 C.D. 2017
                                  :    Argued:  February 7, 2018
Sunoco Pipeline L.P.,           :
                  Appellant    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION
BY JUDGE BROBSON                FILED:  April 30, 2018

## I.   INTRODUCTION

This appeal arises out of an action for declaratory and injunctive relief brought by Clean Air Council and two of its members, Margaret M. deMarteleire and Michael S. Bomstein (collectively, Plaintiffs), in the Court of Common Pleas of Philadelphia County (trial court) against Sunoco Pipeline L.P. (Sunoco).  By Order dated May 25, 2017, the trial court, by the Honorable Linda S. Carpenter, denied Sunoco's motion for summary judgment.  The trial court, by the Honorable Mary D. Colins, issued an amending order on July 13, 2017, pursuant to Section 702(b) of

the Judicial Code, 42 Pa. C.S. § 702(b),[1] certifying the following controlling questions of law for immediate appellate review:

> (a) Are Plaintiffs' claims outside the subject matter jurisdiction of the [trial court] or otherwise non-justiciable as collateral attacks on the Public Utility Commission's (PUC) determinations?
>
> (b) Are Plaintiffs' claims based upon Pennsylvania Constitution Article I, Section 27 also outside the subject matter jurisdiction of the [trial court] or otherwise non-justiciable as collateral attacks on the Department of Environmental Protection's issuance of environmental permits to [Sunoco] for the pipelines?
>
> (c) Do Plaintiffs, as non-condemnees, lack standing to pursue their claims?
>
> (d) Are Plaintiffs' due process claims legally insufficient because the procedural provisions of the Eminent Domain Code[2] and remedies provided by the Public Utility Code[3] satisfy any due process requirements?

Sunoco thereafter filed a petition for permission to appeal pursuant to Rule 1311(b) of the Pennsylvania Rules of Appellate Procedure, which this Court granted by its Order of September 27, 2017. In so doing, we indicated that we would consider the above questions certified by the trial court, along with the question of

---

[1] Section 702(b) of the Judicial Code provides:

When a court . . . , in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

[2] 26 Pa. C.S. §§ 101-1106.

[3] 66 Pa. C.S. §§ 101-3316.

whether Sunoco is "the Commonwealth," such that it can be sued for violating the duties of the "trustee" under Article I, Section 27 of the Pennsylvania Constitution.[4]

## II. BACKGROUND

Plaintiffs commenced this action in the trial court by Complaint filed on August 27, 2015. (Reproduced Record (R.R.) 59a-398a.) In their eight-count Complaint,[5] Plaintiffs challenge the right, authority, and entitlement of Sunoco to exercise the power of eminent domain in order to construct two natural gas liquid (NGL) pipelines, known as Mariner East 1 (ME1) and Mariner East 2 (ME2), across the Commonwealth of Pennsylvania as part of Sunoco's Mariner East Project. Ms. deMarteleire and Mr. Bomstein are husband and wife, jointly residing at their home in Media, Delaware County, Pennsylvania. (Compl. ¶ 2.) Both are members of Clean Air Council. Clean Air Council is a nonprofit corporation with a place of business in Philadelphia, Pennsylvania. (*Id.* ¶ 1.) Clean Air Council's mission is to protect everyone's right to breathe clean air.

Plaintiffs' Complaint includes a lengthy and detailed history of the Mariner East Project, with which this Court is very familiar. Briefly stated, the Mariner East Project is an effort by Sunoco to construct and operate an integrated pipeline system to transport petroleum products and NGLs (*e.g.*, propane, ethane, and butane) from the Marcellus and Utica Shale formations in Pennsylvania, Ohio,

_____

[4] Article I, Section 27 of the Pennsylvania Constitution, otherwise known as the Environmental Rights Amendment, provides:

The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

[5] By order dated February 5, 2016, the trial court struck Count IX of the Complaint.

3

and West Virginia, through the Commonwealth of Pennsylvania, with a terminus at Sunoco's Marcus Hook Industrial Complex in Delaware County, Pennsylvania. *See In re Condemnation by Sunoco Pipeline L.P.*, 143 A.3d 1000, 1008 (Pa. Cmwlth.) (en banc) (*Martin*), *appeal denied*, 164 A.3d 485 (Pa. 2016). The project consists of two phases—ME1 (combination of new and existing pipelines) and ME2 (entirely new pipeline). *Id.*

As Plaintiffs note in paragraph 56 of their Complaint, efforts by Sunoco to acquire easements over private property to construct ME2 have met resistance, spawning litigation across the Commonwealth under the Eminent Domain Code, some of which has reached this Court. The lead case is *Martin*. *Martin* involved litigation over declarations of taking that Sunoco filed in the Court of Common Pleas of Cumberland County pursuant to Section 302 of the Eminent Domain Code,[6] 26 Pa. C.S. § 302, condemning private property for purposes of constructing ME2.[7] The property owners filed preliminary objections, contesting the declarations. In doing so, they raised some of the legal challenges that Plaintiffs raise in their Complaint.

Specifically, the property owners in *Martin* contended that ME2 was an *inter*state pipeline regulated by the Federal Energy Regulatory Commission (FERC) and not an *intra*state pipeline regulated by the PUC as a public utility. As a consequence, Sunoco could not use its eminent domain power as a public utility to

---

[6] The Eminent Domain Code provides that the power of condemnation can only be exercised by the filing of a declaration of taking in the court of common pleas of the county in which the real property is located. 26 Pa. C.S. §§ 301, 302.

[7] In *Martin*, this Court observed that ME1 "has been completed." *Martin*, 143 A.3d at 1008.

4

construct ME2.[8] *Martin*, 143 A.3d at 1015-16; (Compl. Ct. I). The property owners in *Martin* also contended that Sunoco lacked certificates of public convenience (CPC) from the PUC to construct ME1 and ME2, which, under the Public Utility Code, Sunoco must possess in order to exercise its eminent domain power as a public utility.[9] *Martin*, 143 A.3d at 1016-17; (Compl. Ct. II). They also contended that Sunoco failed to demonstrate a public need served by the taking. *Martin*, 143 A.3d at 1017-18.

Ultimately, a divided *en banc* panel of this Court rejected the property owners' contentions and allowed the takings to proceed:

> For these reasons, we conclude that common pleas did not err when it overruled Condemnees' Preliminary Objections to Sunoco's Declarations of Taking. We further conclude that Sunoco is regulated as a public utility by the PUC and is a public utility corporation, and Mariner East interstate service is a public utility service rendered by Sunoco within the meaning of the BCL.[10]

*Martin*, 143 A.3d at 1020 (citation omitted).[11] In so doing, the Court expressly held that Sunoco possesses the requisite approvals from the PUC to construct ME2 to provide intrastate service. *Id.* at 1015-16. Since *Martin*, other property owners across the Commonwealth have fought against Sunoco's efforts to take their property by eminent domain, with similar results. *See, e.g.*, *In re Condemnation by Sunoco Pipeline L.P.*, 165 A.3d 1044 (Pa. Cmwlth. 2017) (*Katz*), *appeal denied*,

---

[8] Under Section 1511(a)(2) of the Business Corporation Law of 1988 (BCL), 15 Pa. C.S. § 1511(a)(2), a public utility corporation may acquire private property through eminent domain for certain "principal purposes," among which is the transportation of natural gas "for the public."

[9] *See* 66 Pa. C.S. §§ 1101, 1104.

[10] 15 Pa. C.S. §§ 1101-4146.

[11] The undersigned and Judge Patricia McCullough each filed a dissenting opinion.

5

(Pa., No. 507 MAL 2017, filed Jan. 22, 2018); *In re Condemnation by Sunoco Pipeline L.P.* (Pa. Cmwlth., No. 1780 C.D. 2016, filed Oct. 24, 2017) (*Andover Homeowners' Assoc., Inc.*), petition for allowance of appeal pending, (Pa., No. 814 MAL 2017, filed Nov. 27, 2017); *In re Condemnation by Sunoco Pipeline L.P.* (Pa. Cmwlth., No. 2030 C.D. 2016, filed June 29, 2017) (*Perkins*), *appeal denied*, (Pa., No. 501 MAL 2017, filed Jan. 22, 2018); *In re Condemnation by Sunoco Pipeline L.P.* (Pa. Cmwlth., No. 1306 C.D. 2016, filed May 26, 2017) (*Blume*), *appeal denied*, (Pa., No. 434 MAL 2017, filed Jan. 22, 2018); *In re Condemnation by Sunoco Pipeline L.P.* (Pa. Cmwlth., No. 565 C.D. 2016, filed May 24, 2017) (*Homes for Am.*), *appeal denied*, (Pa., No. 429 MAL 2017, filed Jan. 22, 2018); *In re Condemnation by Sunoco Pipeline L.P.* (Pa. Cmwlth., No. 220 C.D. 2016, filed May 15, 2017) (*Gerhart*), *appeal denied*, (Pa., No. 400 MAL 2017, filed Jan. 22, 2018).

In their Complaint, Plaintiffs attempt to open up a new front in the battle to stop Sunoco from exercising the power of eminent domain to construct ME1 and ME2.[12] They commenced their assault in the trial court, although it is undisputed that neither ME1 nor ME2 enters Philadelphia County. Moreover, unlike the property owners in the cases cited above, Plaintiffs do not allege to be "condemnees"—*i.e.*, owners of real property subject to filed declarations of taking under the Eminent Domain Code. *See* 26 Pa. C.S. § 103 (definition of "condemnee"). Instead, Ms. deMarteleire and Mr. Bomstein allege that their home in Delaware County was, at the time they filed their Complaint, on the *proposed* route of ME2. (Compl. ¶ 108.)

---

[12] As previously noted, ME1 "has been completed." *Martin*, 143 A.3d at 1008.

As for its interest, Clean Air Council also identifies as a member Eric Friedman, a resident of the Andover Development in Thornberry Township, Delaware County, and President of the Andover Homeowners' Association (Andover HOA). (Compl. ¶¶ 118-19.) Plaintiffs allege that the path of ME2 would run through open space in the Andover Development and that the Andover HOA and Mr. Friedman oppose any easement to Sunoco to construct ME2. (Compl. ¶¶ 120-25.) Indeed, Sunoco proceeded under the Eminent Domain Code by filing a declaration of taking in the Court of Common Pleas of Delaware County for purposes of securing an easement to construct a portion of ME2 within the Andover HOA open space. The Andover HOA filed preliminary objections, challenging the declaration. The Delaware County court overruled the preliminary objections, thereby allowing the taking. This Court affirmed. *Andover Homeowners' Assoc., Inc.*, slip. op. at 11.[13]

Clean Air Council also points to one of its members, Thomas Casey of Chester County. According to the Complaint, Sunoco "initially expressed intent" to take Mr. Casey's land for purposes of ME2, but it ultimately chose not to do so. (Compl. ¶ 129.) Clean Air Council also alleges generally that it "has members throughout Pennsylvania, including along the route of" ME2 who do not wish to give or sell an easement to Sunoco for ME2. (Compl. ¶¶ 116, 235.) Clean Air Council, however, does not identify any of these members, nor does it allege that any of them face an imminent taking of their property by Sunoco.

As noted above, Counts I and II of the Complaint include claims that are identical in all material respects to challenges that this Court addressed in *Martin*.

---

[13] In our decision, we vacated and remanded only that portion of the Delaware County court's order relating to the amount of the bond filed by Sunoco. Andover HOA has filed a petition for allowance of appeal with the Pennsylvania Supreme Court, docketed at 814 MAL 2017.

With respect to relief, Plaintiffs seek a judicial declaration that Sunoco "may not exercise the right of eminent domain against" Ms. deMarteleire and Mr. Bomstein and other Clean Air Council members. (R.R. 98a, 100a.) In Counts III and IV, Plaintiffs seek a judicial declaration that Sunoco's condemnations to construct the Mariner East Project violate Plaintiffs' property rights secured by the Takings Clause of the Fifth Amendment to the United States Constitution[14] and Article X, Section 4 of the Pennsylvania Constitution[15] and that, as a result, Sunoco "may not exercise the right of eminent domain against" Ms. deMarteleire and Mr. Bomstein and other Clean Air Council members. (Compl. Cts. III, IV.) In this regard, Plaintiffs specifically allege that Sunoco is using its eminent domain power to effect a "private taking" for a "private purpose."

In Counts V and VI, Plaintiffs purport to raise a procedural due process challenge under the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Pennsylvania Constitution.[16] (R.R. 103a.) Specifically,

---

[14] The Fifth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment to the United States Constitution, prohibits the taking of private property for "public use" without just compensation. The Pennsylvania Constitution includes a similar takings clause in Article I, Section 10, which prohibits the taking of private property for "public use" without legal authority and just compensation. Plaintiffs, however, do not specifically allege a violation of Article I, Section 10 in their Complaint.

[15] Article X, Section 4 of the Pennsylvania Constitution requires municipal and other corporations, when exercising the power of eminent domain, to make just compensation for the property taken for "public use."

[16] The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Though not explicitly found in the text, the Pennsylvania Supreme Court has held that the guarantee of due process of law in Pennsylvania jurisprudence emanates from Article I, Sections 1, 9, and 11 of the Pennsylvania Constitution. *Lyness v. State Bd. of Med.*, 605 A.2d 1204, 1207 (Pa. 1992). The due process standards of the United States and Pennsylvania Constitutions are, however, essentially the same. *Muscarella v. Commonwealth*, 87 A.3d 966, 973 (Pa. Cmwlth. 2014).

8

Plaintiffs aver that they did not receive adequate notice of any PUC authorizations granted to Sunoco to construct ME1 or ME2. Had they received such notices, Plaintiffs allege that they would have appeared before the PUC to oppose such authorizations. As for relief, Plaintiffs seek a "hearing to determine whether [Sunoco] is entitled to exercise eminent domain rights over" Ms. deMarteleire's and Mr. Bomstein's property and other Clean Air Council members' properties. (*Id.*)

In Count VII of the Complaint, Plaintiffs allege that Sunoco has fiduciary duties as a trustee under the Environmental Rights Amendment to consider the impact its construction of the Mariner East Project would have on Pennsylvania's public natural resources. Plaintiffs further allege that Sunoco has failed to perform this assessment. Accordingly, Plaintiffs seek a declaration that Sunoco may not pursue eminent domain with respect to either ME1 or ME2 "until it demonstrates *to the PUC* that its pipeline project comports with the Environmental Rights Amendment." (R.R. 104a (emphasis added).) Finally, in Count VIII, Plaintiffs seek preliminary and final injunctive relief, barring Sunoco from using eminent domain to acquire easements to construct ME1 and ME2 based on the substantive claims in the Complaint. (R.R. 107a.)

In its Opinion in support of its order denying Sunoco's motion for summary judgment, the trial court rejected Sunoco's contention that this Court's decisions in *Martin* and subsequent eminent domain cases related to the Mariner East Project compelled the trial court to enter judgment in Sunoco's favor as a matter of law on Plaintiffs' claims. (Trial Ct. Op. at 6-10.) With respect to Counts I and II, the trial court noted that discovery is ongoing and factual issues remain that preclude the entry of summary judgment. With respect to the remaining substantive counts (Counts III-VII), the trial court noted that these constitutional claims are outside of

9

the ambit of the Eminent Domain Code and the adjudicative authority of the PUC. Accordingly, they were not raised nor could they have been raised in the condemnation cases previously addressed by this Court. Finally, the trial court noted that because summary judgment would be denied with respect to the substantive counts of the Complaint, Count VIII, which derivatively seeks injunctive relief, should also proceed.

## III. ANALYSIS

### A. Standard of Review

Our standard of review on appeal from the grant or denial of summary judgment is de novo, and our scope of review is plenary. *Pentlong Corp. v. GLS Capital, Inc.*, 72 A.3d 818, 823 n.6 (Pa. Cmwlth. 2013). Our review is limited to determining whether the trial court committed an error of law or abuse of discretion. *Wolfe v. Stroudsburg Area Sch. Dist.*, 688 A.2d 1245, 1247 (Pa. Cmwlth. 1997). Summary judgment is only appropriate where, upon examination of the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is clearly entitled to a judgment as a matter of law. *Dwight v. Girard Med. Ctr.*, 623 A.2d 913, 915 (Pa. Cmwlth. 1993).

In their brief, Plaintiffs raise several concerns about issue preservation, suggesting that Sunoco did not raise or preserve below the questions currently on appeal with respect to some or all of the counts of the Complaint. In response, we note that it is the trial court, not Sunoco, that has certified questions to this Court as "controlling questions of law" and has amended its prior order, denying summary judgment, to indicate that its ruling denying Sunoco's motion for summary judgment "involves" the four questions that the trial court certified in its amending order pursuant to Section 702(b) of the Judicial Code. Moreover, in their Answer to

10

Petition for Permission to Appeal Under Pa. R.A.P. 1311 filed with the Court in this matter, Plaintiffs concede that Sunoco raised the issues currently before this Court in several filings before the trial court, most recently its motion for summary judgment. (Pls.' Answer at 1-2.) For these reasons, we will proceed to address the issues certified by the trial court consistent with the standard and scope of review set forth above.

**B. Question 1: Are Plaintiffs' Claims Outside the Subject Matter Jurisdiction of the [Trial Court] or Otherwise Non-Justiciable Collateral Attacks on the Public Utility Commission's Determinations?[17]**

*1. Count I (Interstate/Intrastate) and Count II (Lack of CPCs)*

The essence of Plaintiffs' Contention in Count I of the Complaint is that ME1 and ME2 are interstate pipelines regulated by the FERC, not the PUC. Sunoco, therefore, lacks the authority to condemn property to construct ME1 and ME2 afforded under the BCL to public utilities regulated by the PUC. In Count II, Plaintiffs contend that even if the Mariner East Project is intrastate in nature, the PUC has not issued the required CPCs for the pipelines. Sunoco essentially argues that in *Martin*, the issues raised by Plaintiffs in Counts I and II of the Complaint have already been decided. Sunoco contends that Plaintiffs' effort to press the issues in the trial court amount to collateral attacks on the CPCs issued by the PUC to Sunoco.

In response, Plaintiffs claim that common pleas courts, and not the PUC, have "jurisdiction over claims as to the validity of a utility's taking." (Pls.' Br. at 16.) In support, Plaintiffs cite to this Court's opinion in *Southeastern*

---

[17] A court's lack of subject matter jurisdiction is a nonwaivable issue that can be raised at any stage of the proceeding, even by an appellate court *sua sponte*. *See, e.g.*, *LeFlar v. Gulf Creek Indus. Park No. 2*, 515 A.2d 875, 879 (Pa. 1986).

*Pennsylvania Transportation Authority v. Public Utility Commission*, 991 A.2d 1021 (Pa. Cmwlth. 2010) (*SEPTA*). In that case, SEPTA appealed the PUC's approval of an application to site and construct a high voltage power line. On appeal, SEPTA contended that the PUC should have denied the application, because the utility could not justify condemnation of the property to construct the power line. Agreeing with the PUC, this Court held that whether a public utility may exercise the power of eminent domain is not an issue that the PUC considers when reviewing an application for a CPC:

> [T]he only role of the PUC is to consider if the project is necessary or proper for the benefit of the public, and it is expressly barred from considering the power of the utility to condemn. After the PUC authorizes a utility to exercise the power of eminent domain, a condemnation is far from final, as 15 Pa. C.S. § 1511(g) makes clear that before taking the land, the utility must prevail in a condemnation action at the Court of Common Pleas. As our Supreme Court held, in interpreting an earlier but substantially similar version of the statute: "Once there has been a determination by the PUC that the proposed service is necessary and proper, the issues of scope and validity and damages must be determined by a Court of Common Pleas exercising equity jurisdiction."

*SEPTA*, 991 A.2d at 1023 (quoting *Fairview Water Co. v. Pa. Pub. Util. Comm'n*, 502 A.2d 162, 167 (Pa. 1985)).

We agree with Plaintiffs in their assessment of the law but only to a point. We do not read Counts I and II of the Complaint as challenging orders or CPCs issued by the PUC to Sunoco. Rather, Plaintiffs challenge the power of Sunoco to condemn property by eminent domain. As we noted in *SEPTA*, in order to exercise the power of eminent domain conferred by the BCL, a public utility must

12

first obtain a CPC from the PUC.[18] In evaluating a request for a CPC, the PUC only considers whether the proposed service is "necessary or proper for the service, accommodation, convenience, or safety of the public." 66 Pa. C.S. § 1103(a). There is no provision in either the Public Utility Code or the BCL that also authorizes the PUC, in the context of a CPC administrative proceeding, to consider whether the public utility may exercise the power of eminent domain to effect a taking in furtherance of the authorized service. Indeed, as this Court observed in *SEPTA*, although the issuance of the CPC allows the public utility to commence proceedings under the Eminent Domain Code, success in the common pleas court is not guaranteed. To effect a condemnation, the public utility must proceed and succeed in the common pleas court under the Eminent Domain Code. 15 Pa. C.S. § 1511(g) (requiring all condemnation and taking of property authorized by section to follow procedures under Eminent Domain Code); s*ee also Martin*, 143 A.3d at 1019 (discussing separate roles of PUC and common pleas courts).

In Counts I and II, like the condemnees in *Martin*, Plaintiffs challenge the power of Sunoco to exercise eminent domain on two grounds: (1) Sunoco is not a public utility for purposes of the Mariner East Project because the project is purely interstate in nature and not regulated by the PUC; and (2) if intrastate, Sunoco has not secured the required CPCs from the PUC. Neither claim amounts to a collateral attack of the CPCs that the PUC has issued to Sunoco or a challenge to the PUC's determination of "public need" set forth in those CPCs. There remains, however, the question of the trial court's subject matter jurisdiction.

---

[18] For purposes of Sunoco's ME1 and ME2 pipelines, that requirement is found in Section 1104 of the Public Utility Code, 66 Pa. C.S. § 1104, which provides: "Unless its power of eminent domain existed under prior law, no domestic public utility . . . shall exercise any power of eminent domain within this Commonwealth until it shall have received the certificate of public convenience required by section 1101."

The Pennsylvania Supreme Court has observed: "Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented. Jurisdiction is a matter of substantive law." *Commonwealth v. Bethea*, 828 A.2d 1066, 1074 (Pa. 2003), *cert. denied*, 540 U.S. 1118 (2004). As for jurisdiction of the courts of common pleas, Section 931(a) of the Judicial Code, 42 Pa. C.S. § 931(a), provides:

> *Except where exclusive original jurisdiction of an action or proceeding is by statute* or by general rule adopted pursuant to section 503 (relating to assignment of matters) *vested in another court of this Commonwealth*, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas.

(Emphasis added.) The test for determining whether a court has subject matter jurisdiction is whether the court has "'the power to enter upon the inquiry, not whether it might ultimately decide that it was unable to grant the relief sought in the particular case.'" *Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Prob. and Parole)*, 860 A.2d 25, 29 (Pa. 2004) (quoting *Strank v. Mercy Hosp. of Johnstown*, 102 A.2d 170, 172 (Pa. 1954)).

Applying this test, we hold that the trial court's general jurisdiction under Section 931(a) of the Judicial Code does not extend to claims seeking to adjudicate the power and right of a public utility to condemn property. As noted above, the substantive law of this Commonwealth requires that public utilities wishing to condemn private property abide by the procedures set forth in the Eminent Domain Code. The Eminent Domain Code "provides a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages." 26 Pa. C.S. § 102. To condemn property, the

14

condemnor must commence an action "*in the court of the county* in which the property is located or, if the property is located in two or more counties, in the court of any one of the counties." 26 Pa. C.S. § 301 (emphasis added). The condemnor does so by, *inter alia*, filing in court a declaration of taking and providing notice to the condemnee. 26 Pa. C.S. §§ 302-305. Thereafter, the condemnee may file preliminary objections, challenging the condemnation on certain grounds:

> Preliminary objections *shall be limited to and shall be the exclusive method of challenging*:
>
> (i)     The *power or right of the condemnor* to appropriate the condemned property unless it has been previously adjudicated.
>
> (ii)    The sufficiency of the security.
>
> (iii)   The declaration of taking.
>
> (iv)   Any other procedure followed by the condemnor.

26 Pa. C.S. § 306(a)(3) (emphasis added).

In *Vartan v. Reed*, 514 A.2d 646 (Pa. Cmwlth. 1986), *appeal denied*, 536 A.2d 1335 (Pa. 1987), the owner of property in the City of Harrisburg was advised that a local redevelopment authority planned to acquire the property by condemnation. Rather than wait for this to occur, the property owner commenced an action in common pleas court, seeking an order enjoining the authority from attempting to acquire the property by eminent domain. The common pleas court granted the injunction, and the authority appealed. This Court reversed, finding that the common pleas court lacked subject matter jurisdiction over the case: "It has uniformly been held that equity does not have jurisdiction to enjoin a condemnation, whether or not a declaration of taking has been filed; and that *preliminary objections*

15

*shall be the exclusive method of challenging the right or power to condemn.*"
*Vartan*, 514 A.2d at 648 (emphasis added).[19]

Whether Sunoco is a public utility for purposes of the Mariner East Project (Count I) and, if it is, whether it has secured the required CPCs to proceed therewith (Count II) are questions that go to the "power and right" of Sunoco to condemn land by eminent domain under the BCL. Under the substantive law of this Commonwealth, the exclusive method for raising these questions is through preliminary objections filed (1) by the condemnee, (2) *after* the filing of a declaration of taking, and (3) in the court of common pleas *where the property is located.* As Plaintiffs' action below does not meet any of these parameters, the trial court lacks subject matter jurisdiction over Counts I and II of the Complaint.

### 2. *Counts III and IV (Unconstitutional Takings)*

As noted above, in Counts III and IV of the Complaint, Plaintiffs' claim that Sunoco's condemnations of property for the Mariner East Project violate the Takings Clause of the Fifth Amendment and Article X, Section 4 of the Pennsylvania Constitution. To properly exercise eminent domain under these provisions, Plaintiffs contend, the condemnations in question must be for a public purpose. Citing, *inter alia*, the Pennsylvania Supreme Court's decision in *Middletown Township v. Lands of Stone*, 939 A.2d 331 (Pa. 2007), Plaintiffs contend that the test for determining whether a condemnation is for a "public purpose" is whether the

---

[19] In *Vartan*, the Court addressed the exclusiveness of the remedy under Section 406(a) of the 1964 Eminent Domain Code (Former Code). *See* Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, *formerly* 26 P.S. § 1 406(a), repealed by Section 5 of the Act of May 4, 2006, P.L. 112. Under Section 306(a) of the current Eminent Domain Code, 26 Pa. C.S. § 306(a), "preliminary objections are still the exclusive method of challenging the condemnor's right to take, the declaration of taking itself, and any procedural irregularities by the condemnor." *Lang v. Dep't of Transp.*, 13 A.3d 1043, 1049 (Pa. Cmwlth. 2011).

16

public is "the primary and paramount beneficiary." *Lands of Stone*, 939 A.2d at 337-38. Plaintiffs seek the opportunity to establish below that although a public need may be served by the Mariner East Project, for purposes of triggering the power to condemn under the BCL, the condemnations do not satisfy the "primary and paramount beneficiary test."

Counts III and IV of the Complaint raise questions that go to the "power and right" of Sunoco to condemn land by eminent domain under the United States and Pennsylvania Constitutions. Indeed, *Lands of Stone*, the opinion on which Plaintiffs rely, arose under the Eminent Domain Code. The township in that case filed a declaration of taking to condemn property for preservation of open space. The condemnee filed preliminary objections, challenging, *inter alia*, the power of the township to take his property. The Pennsylvania Supreme Court held that although the township had the statutory power to condemn the property for open space (recreational purposes), the record was inadequate to determine whether the condemnation violated the Takings Clause of the Fifth Amendment to the United States Constitution. Accordingly, it remanded the matter to common pleas (proceeding under the Eminent Domain Code) to develop a record and consider the question. *Lands of Stone*, 939 A.2d at 337-40.

The trial court concluded that it could exercise jurisdiction over these claims, citing the Pennsylvania Supreme Court's decision in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013) (*Robinson Twp.*). That case, however, involved a facial validity challenge to a statute enacted by the General Assembly, which authorized certain private entities in the oil and gas industry to condemn property through eminent domain. The plaintiffs claimed that the statute was unconstitutional because it authorized private takings in violation of the

17

Pennsylvania and United States Constitutions. In rebuffing the Commonwealth's contention that the plaintiffs could not bring their challenge until a company attempted to exercise that authority by filing a declaration of taking under the Eminent Domain Code and then raise it by preliminary objection, the Supreme Court explained:

> Waiting for a test case implicating a taking under [the statute]—and subject to the Eminent Domain Code's exclusive procedures—is certainly an available avenue for testing the constitutionality of the provision. But, *as a facial challenge to the validity of a statutory provision and pure question of law*, the citizens' claim is also generally appropriate for pre-enforcement review in a declaratory judgment action.

*Robinson Twp.*, 83 A.3d at 990 (emphasis added).

By analogy, this case would be similar to *Robinson Twp.* if Plaintiffs were challenging the constitutionality of Section 1511(a)(2) of the BCL, which provides public utilities with the power to condemn private property. Counts III and IV, however, do not raise facial challenges to the constitutionality of a statute; rather, they call into question the public purpose of particular takings across the Commonwealth. Moreover, the claims do not involve pure questions of law, as Plaintiffs contend at several points in their appellate brief. (*See, e.g.*, Pls.' Br. at 35.) The trial court's reliance on *Robinson Twp.*, therefore, was misplaced.

For these reasons, the Eminent Domain Code provides the exclusive procedure for challenging the power and right of Sunoco to condemn under the United States and Pennsylvania Constitutions. The trial court, therefore, lacks subject matter jurisdiction over Counts III and IV of the Complaint.

### 3. Counts V and VI (Due Process)

In Counts V and VI, under the guise of due process claims, Plaintiffs aver that the CPCs Sunoco received from the PUC affected the property rights of the Plaintiffs as well as other Clean Air Council members, as Sunoco has relied on them to support its exercise of eminent domain to obtain easements for the construction of the Mariner East Project. Plaintiffs allege that Sunoco should have been required under Pennsylvania recording laws to index the CPCs in county records as encumbrances. (Compl. ¶¶ 207, 210.) Sunoco did not record the CPCs in the Delaware County property records relating to Ms. deMarteleire's and Mr. Bomstein's property. (Compl. ¶ 207.) As a result, neither Ms. deMarteleire nor Mr. Bomstein ever had actual or constructive notice that Sunoco "was planning to construct a pipeline in their backyard." (Compl. ¶ 208.) Further, Plaintiffs posit that *if* Sunoco were to apply to the PUC for approval to build ME1 and ME2 and had notified Plaintiffs of its application, Plaintiffs would have appeared to oppose any such application. (Compl. ¶ 212.)

Sunoco contends that Plaintiffs' due process claims are collateral attacks on the process the PUC followed to issue the CPCs to Sunoco that relate to the Mariner East Project and the validity and enforceability of those CPCs. It contends that such issues fall within the PUC's exclusive jurisdiction. Sunoco does not cite any authority to support its position. Plaintiffs respond, however, that claims that a condemnor failed to afford due process is "collateral" to an eminent domain proceeding and, therefore, can be raised before a common pleas court sitting in equity. In support, Plaintiffs cite to cases from this Court, one of which addresses due process claims.

19

In *Condemnation of Legislative Route 201*, 349 A.2d 819 (Pa. Cmwlth. 1975) (en banc) (*Becker*), the Pennsylvania Department of Transportation (PennDOT) initiated condemnation proceedings under the Former Code to acquire private property for purposes of a road-widening project. Before initiating condemnation proceedings and during the design phase of the project, then-existing state and federal law required PennDOT to provide notice of the project to the public with an opportunity to be heard with respect to, *inter alia*, the environmental impacts of the design. *Becker*, 349 A.2d at 819-20. After PennDOT completed the design phase and initiated proceedings under the Former Code to condemn property in Chester County, the condemnees filed preliminary objections, which included an objection under the Environmental Rights Amendment. The common pleas court dismissed the preliminary objections, and the condemnees appealed. *Id.* at 820.

On appeal to this Court, the condemnees argued that PennDOT violated their due process rights by failing to give them *personal* notice of and an opportunity for hearing as to the environmental impacts of the project: "This, they argue, makes the condemnation proceedings a nullity." *Id.* Initially, this Court considered whether the procedural due process challenge fell within the scope of the four authorized preliminary objections under the Former Code, which are materially identical to the four grounds set forth in Section 306(a)(3) of the Eminent Domain Code. The Court first held that the challenge did not go to PennDOT's "power or right" to condemn, which is provided for in a statute separate and apart from the procedures that govern planning for highway projects. *Id.* at 821. Noting that the condemnees did not challenge the sufficiency of the security or the declaration of the taking itself, the Court considered whether the condemnees' due process challenge could be considered an objection to "any other procedure followed by the

20

condemnor." *Id.* The Court concluded that it did not, noting that this preliminary objection is confined to other procedures set forth in the Former Code directly related to the filing of a declaration of taking. *Id.* (citing *Simco Stores, Inc. v. Phila. Redevelopment Auth.*, 302 A.2d 907 (Pa. Cmwlth. 1973), *aff'd*, 317 A.2d 610 (1974)).

The Court concluded that the appeal was analogous to the Court's earlier decision in *Simco*:

> The instant appeal is analogous to *Simco*, wherein a local ordinance protected businesses from eviction for one year subsequent to the declaration of taking. The condemnor attempted such an eviction, and the condemnee raised preliminary objections based on the ordinance. We found such an objection to be improper, because even though the conduct was improper under the ordinance, *the power to take was still effective.*

*Id.* (emphasis added). Concluding, then, that the condemnees' due process challenge could not be raised by preliminary objection under the Former Code, the Court held:

> Even if one assumes that failure to give personal notice to [the condemnees] of the highway project hearing here involved constituted legal error, preliminary objections to the declaration of taking is not the proper vehicle to challenge such procedures. *Here the challenge goes to a matter that is primarily of a planning nature and collateral to the condemnation proceeding.*

*Id.* at 821-22 (emphasis added).

Although Sunoco has not persuaded the Court that Plaintiffs' due process challenge lies in the exclusive jurisdiction of the PUC, we are also unpersuaded by Plaintiffs' arguments that their due process challenges in Counts V and VI of the Complaint are akin to the collateral claims discussed in *Becker* and *Simco*. In *Becker*, PennDOT's power to condemn was unaffected by its alleged failure to afford due process in the design phase of a highway project.

21

In *Simco*, the condemnor allegedly acted in contravention of a local ordinance *after* it filed the declaration of taking, not at all implicating the power to file the declaration of taking in the first place. Here, by contrast, Sunoco's power and right to condemn property by Eminent Domain *depends* on the existence and validity of CPCs issued by the PUC to Sunoco. *See* 66 Pa. C.S. § 1104. Counts V and VI plainly level a due process challenge to the validity and enforceability of the CPCs. As such, although couched in terms of due process, the claims are similar in kind to Counts I through IV of the Complaint in that they call into question the "power and right" of Sunoco to condemn land by eminent domain under the BCL.

Accordingly, for the reasons set forth above with respect to Counts I through IV, the claims set forth in Counts V and VI of the Complaint must be raised in the context of proceedings under the Eminent Domain Code.[20] The trial court, therefore, erred in concluding that Plaintiffs could invoke the trial court's general jurisdiction under Section 931(a) of the Judicial Code to address their due process claims.

### C. Question 2: Are Plaintiffs' Claims Based Upon Pennsylvania Constitution Article I, Section 27 Also Outside the Subject Matter Jurisdiction of the [Trial Court] or Otherwise Non-Justiciable Collateral Attacks on the Department of Environmental Protection's Issuance of Environmental Permits to [Sunoco] for the Pipelines?

In Count VII of the Complaint, Plaintiffs seek a declaratory judgment that Sunoco violated its fiduciary duties as a trustee under the Environmental Rights Amendment by failing to consider the environmental impacts of the Mariner East Project before moving forward. They seek a declaration that Sunoco may not

_____

[20] In light of this ruling, we need not consider the fourth question that the trial court certified for appeal, relating to the legal sufficiency of Plaintiffs' due process claims.

22

acquire property by eminent domain for the Mariner East Project until Sunoco demonstrates "to the PUC" that the project "comports with the Environmental Rights Amendment." (R.R. 104a (emphasis added).)

As noted above, in ascertaining whether the trial court has subject matter jurisdiction over this claim, we concern ourselves with the power of the trial court to enter upon the inquiry, not whether it might be able to issue the relief Plaintiffs seek. The inquiry prompted by the Complaint is whether Sunoco has violated the Environmental Rights Amendment with respect to the construction of the Mariner East Project. In support of its jurisdictional challenge, Sunoco claims that Count VII is nothing more than a collateral attack on the decisions by the PUC and the Department of Environmental Protection approving the project. Instead, Sunoco contends, Plaintiffs should have raised any Environmental Rights Amendment concerns in appeals from the determinations of those agencies relating to the Mariner East Project. In response, Plaintiffs raise several points, none of which appear to address directly the question of the trial court's jurisdiction.

Our review of the Complaint, particularly Count VII, convinces us that Plaintiffs are not seeking to attack collaterally PUC or Department of Environmental Protection approvals relating to the Mariner East Project. Instead, Plaintiffs' legal claim is that Sunoco, and Sunoco alone, has violated the Environmental Rights Amendment in choosing to proceed with the project. Whether Sunoco has secured necessary regulatory approvals may have some relevance to its defense to Plaintiffs' claim,[21] but anticipated defenses do not dictate our analysis of the trial court's subject matter jurisdiction.

---

[21] Until the Pennsylvania Supreme Court's decision in *Pennsylvania Environmental Defense Foundation v. Commonwealth*, 161 A.3d 911 (Pa. 2017) (*PEDF*), one of the factors that

23

When we accepted this interlocutory appeal, we agreed to consider the four issues that the trial court certified, along with the question of whether Sunoco is "the Commonwealth," such that it can be sued for violating the duties of the "trustee" under the Environmental Rights Amendment. We requested that the parties address this question in their briefs. Both parties did so. Plaintiffs, in addition, argued that because Sunoco did not raise this question below, the question was not properly before the Court: "[T]he question may not be considered on appeal, *sua sponte* or otherwise." (Pls.' Br. at 42.) It is apparent that Plaintiffs do not appreciate the purpose behind the Court's question.

In *PEDF*, the Pennsylvania Supreme Court explained the scope of protections afforded under the Environmental Rights Amendment:

> [The Environmental Rights Amendment] grants two separate rights to the people of this Commonwealth. The first right is contained in the first sentence, which is a prohibitory clause declaring the right of citizens to clean air and pure water, and to the preservation of natural, scenic, historic and aesthetic values of the environment. This clause places a limitation *on the state's power to act contrary to this right*, and while the subject of this right may be amenable to regulation, any laws that unreasonably impair the right are unconstitutional.
>
> The second right reserved by Section 27, set forth in its second sentence, is the common ownership by the people, including future generations, of Pennsylvania's public natural resources. . . .

---

this Court considered when evaluating a challenge under the Environmental Rights Amendment was whether the challenged action complied with all applicable statutes and regulations relating to the protection of the Commonwealth's public natural resources. In *PEDF*, however, the Supreme Court rejected this Court's three-part test, first articulated in *Payne v. Kassab*, 312 A.2d 86 (1973), *aff'd*, 361 A.2d 263 (Pa. 1976). *PEDF*, 161 A.3d at 930. This does not necessarily mean, however, that compliance with statutes and regulations is irrelevant to the inquiry, even under the new standards adopted by the Pennsylvania Supreme Court in *PEDF*.

> The third clause . . . establishes a public trust, pursuant to which the natural resources are the corpus of the trust, *the Commonwealth* is the trustee, and the people are the named beneficiaries.

*PEDF*, 161 A.3d at 931-32 (citations and footnote omitted) (emphasis added).  In terms of the trustee's obligation, the Supreme Court offered the following relevant elaboration:

> Trustee obligations are not vested exclusively in any single branch of Pennsylvania's government, and instead *all agencies and entities of the Commonwealth government, both statewide and local*, have a fiduciary duty to act toward the corpus with prudence, loyalty, and impartiality.

*Id.* at 931 n.23.   Accordingly, in terms of actionable rights and duties, the Environmental Rights Amendment does two things:  (1) it limits the power of "the state" to act in derogation of protected environmental interests; and (2) it obligates "the Commonwealth" to act as a trustee of Pennsylvania's public natural resources.

One of the questions that the trial court certified and this Court accepted goes to the trial court's subject matter jurisdiction over Plaintiffs' Environmental Rights Amendment claim.  In light of the foregoing, the Environmental Rights Amendment does not impose duties or obligations on private parties.  *See Feudale v. Aqua Pa., Inc.*, 122 A.3d 462, 466 (Pa. Cmwlth. 2015) ("The plain language of the Environmental Rights Amendment charges the Commonwealth, as trustee, with the duty to conserve and maintain Pennsylvania's public natural resources, and we are unaware of any case law applying this duty to non-Commonwealth entities."), *aff'd*, 135 A.3d 580 (Pa. 2016).  Plaintiffs contend, however, that as a public utility exercising eminent domain powers, Sunoco is not acting purely as a private party.  Instead, it is exerting "governmental powers."  (Pls.' Br. at 44.)  In essence, then,

25

Plaintiffs contend that Sunoco, acting under authority conferred by the PUC, is acting as "the Commonwealth government."[22]

With limited exceptions not applicable here, Section 761(a) of the Judicial Code, 42 Pa. C.S. § 761(a), vests within this Court exclusive original jurisdiction over all civil actions or proceedings "[a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity." 42 Pa. C.S. § 761(a); *see In re Condemnation of Legislative Route 58018*, 375 A.2d 1364, 1367-68 (Pa. Cmwlth. 1977) (en banc) (holding that question of whether PennDOT complied with Environmental Rights Amendment was collateral to eminent domain proceeding and is "properly raised only before this Court within our original jurisdiction"). Accordingly, as Plaintiffs' Environmental Rights Amendment claim hinges on the theory that Sunoco is exercising the powers of the Commonwealth government as a public utility, this Court, and not the trial court, has exclusive original jurisdiction over the claim, and the trial court, on remand, should transfer this matter to this Court's original jurisdiction pursuant to Section 5103(a) of the Judicial Code, 42 Pa. C.S. § 5103(a) (relating to transfers of erroneously filed matters).[23]  This is not to say that the Court has accepted Plaintiffs'

---

[22] Sunoco is clearly not acting on behalf of a local government agency.  If Sunoco is not "the Commonwealth" for purposes of the Environmental Rights Amendment, Plaintiffs cannot prevail on their Environmental Rights Amendment claim.

[23] Section 5103(a) of the Judicial Code provides:

(a)    General rule.--If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge *shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth*, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal

theory of liability. Rather, we reserve for subsequent proceedings the merits question of whether a public utility, such as Sunoco, exercising the power of eminent domain, acts as the Commonwealth government and thus has independent duties or obligations to the people of Pennsylvania under the Environmental Rights Amendment.

### D. Question 3: Do Plaintiffs, as Non-Condemnees, Lack Standing to Pursue Their Claims?

The final issue to be resolved is whether Plaintiffs, as non-condemnees, may pursue their claims against Sunoco. Through our dispositions of the above issues, we have essentially winnowed Plaintiffs' Complaint down to a single count, alleging violations of the Environmental Rights Amendment by Sunoco in failing to consider the environmental impacts of the Mariner East Project before moving forward. We now consider the issue of whether Plaintiffs have standing to maintain this claim.

On this point, Sunoco's briefs are of little value. Boiled down to its essence, Sunoco's contention is that only condemnees can challenge Sunoco's exercise of eminent domain. Because neither Ms. deMarteleire nor Mr. Bomstein are condemnees with respect to the Mariner East Project, Sunoco claims that they lack standing to challenge Sunoco's exercise of eminent domain. Because the individual Plaintiffs lack standing, Clean Air Council, relying on the individual Plaintiffs' status as members, also lacks standing in Sunoco's view. In short, Sunoco's reasoning is premised entirely on its belief that Plaintiffs are challenging a particular condemnation of land. In Count VII of the Complaint, they are not.

---

or other matter was first filed in a court or magisterial district of this Commonwealth.

(Emphasis added.)

Whatever law may restrict who may lodge preliminary objections to a declaration of taking under the Eminent Domain Code does not necessarily limit who may challenge in this Court's original jurisdiction a particular governmental decision for failure to comply with the Environmental Rights Amendment.

On the question of standing to bring a claim under the Environmental Rights Amendment, we look to the Pennsylvania Supreme Court's decision in *Robinson Township v. Commonwealth*, 83 A.3d 901 (Pa. 2013) (*Robinson Twp. II*). There, the Pennsylvania Supreme Court held that property owners within a zoning district had standing to bring an Environmental Rights Amendment claim based upon "the serious risk of alteration in the physical nature of their respective political subdivisions and the components of their surrounding environment." *Robinson Twp. II*, 83 A.3d at 922. Here, even if they are not actual condemnees, Ms. deMarteleire and Mr. Bomstein allege in the Complaint that the Mariner East Project is either on or in close proximity to their property. They assert that the project poses an increased risk of spills or explosions that would impair their property. (R.R. 87a.) Consistent with the Pennsylvania Supreme Court's decision in *Robinson Twp. II*, this Court is satisfied that Ms. deMarteleire and Mr. Bomstein have asserted an interest sufficient to support their standing to assert their Environmental Rights Amendment claim against Sunoco. Concomitantly, Clean Air Council also has standing. *Robinson Twp. II*, 83 A.3d at 922 ("Under Pennsylvania law, an association has standing as representative of its members to bring a cause of action even in the absence of injury to itself, if the association alleges that at least one of its members is suffering immediate or threatened injury as a result of the action challenged.").

28

## IV. CONCLUSION

For the reasons set forth above, the Eminent Domain Code provides the exclusive procedure to raise the claims set forth in Counts I through VI of the Complaint. In addition, because Plaintiffs contend that Sunoco, with respect to its exercise of eminent domain in furtherance of the Mariner East Project, is acting as "the Commonwealth," this Court has exclusive original jurisdiction over Plaintiffs' Environmental Rights Amendment claim in Count VII of the Complaint. We, therefore, will reverse the trial court's May 25, 2017 Order and remand with instruction that the trial court enter summary judgment in favor of Sunoco on Counts I through VI of the Complaint and transfer what remains to this Court pursuant to Section 5103(a) of the Judicial Code.


P. KEVIN BROBSON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clean Air Council,            :
Margaret M. deMarteleire, and     :
Michael S. Bomstein          :
                             :
          v.               :    No. 1112 C.D. 2017
                             :
Sunoco Pipeline L.P.,         :
              Appellant    :

## **O R D E R**

AND NOW, this 30th day of April, 2018, it is hereby ORDERED that the Order of the Court of Common Pleas of Philadelphia County (trial court), dated May 25, 2017, as amended by Order dated July 13, 2017, is REVERSED, and the matter is REMANDED with instruction that the trial court enter summary judgment in favor of Appellant (Defendant below) Sunoco Pipeline L.P. as to Counts I through VI of the Complaint and transfer what remains to this Court's original jurisdiction pursuant to Section 5103(a) of the Judicial Code, 42 Pa. C.S. § 5103(a).

Jurisdiction relinquished.

 

                            _____
                            P. KEVIN BROBSON, Judge