IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adria Charles Staffieri and Gary    :
Staffieri,    :
             Appellants    :
    :
         v.    :   No. 605 C.D. 2024
    :   Submitted: March 4, 2025
The Board of Directors for the Mills    :
at Rose Valley Homeowner's    :
Association    :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE STACY WALLACE, Judge (P.)
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER      FILED: April 24, 2025

      Adria Charles Staffieri and Gary Staffieri (together, Staffieris), pro se, appeal from the Order of the Court of Common Pleas of Delaware County (trial court), dated April 30, 2024, which denied the Staffieris' Motion for Summary Judgment (Motion) and granted the Cross-Motion for Summary Judgment (Cross-Motion) filed by the Board of Directors for the Mills at Rose Valley Homeowner's Association (Association). Upon review, we affirm the trial court's Order because we conclude that there are no genuine issues of material fact, and the Association is entitled to a judgment as a matter of law.

# I.    BACKGROUND

The Staffieris own a single-family home on Sackville Mills Lane in Nether Providence Township, Pennsylvania.  (Reproduced Record (R.R.) at 31-33.)[1]  The Staffieris' home is located within The Mills at Rose Valley (Community), a planned community managed by the Association.  (*Id.* at 31-33, 50, 52.)  The Community is a "zero lot" community, which means homeowners, including the Staffieris, own only the land upon which their home physically occupies.  (*Id.* at 58.)  The land surrounding the home within the Community constitutes common area belonging to the Association and is subject to various easements.  (*Id.* at 53-54, 81-85.)

Across from the Staffieris' home is land outside of the Community which belongs to neighbors residing on Briarcrest Drive in Rose Valley Township (Briarcrest Neighbors).  (*See id.* at 2, 124, 211-13.)  The rear of the Briarcrest Neighbors' property abuts the Community.  (*See id.*)  The Staffieris contend that to ensure privacy between the homeowners on Sackville Mills Lane and the Briarcrest Neighbors, the original builder of the Community excavated an embankment and erected a fence at the top of the embankment on the land opposite of Sackville Mills Lane from the Community.  (Supplemental Reproduced Record (S.R.R.) at 690.)[2]

---

[1] The pagination in the Reproduced Record does not comply with Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173 (requiring "the reproduced record . . . shall be numbered separately in Arabic figures and not in Roman numerals:  thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc. . . . .").

[2] On September 4, 2024, the Association filed a Supplemental Reproduced Record with this Court pursuant to Pennsylvania Rule of Appellate Procedure 2156, Pa.R.A.P. 2156.  The Supplemental Reproduced Record contains the unabridged versions of the Staffieris' Motion, the Association's Response in Opposition to the Staffieris' Motion, the Association's Cross-Motion, and the Staffieris' Response in Opposition to the Association's Cross-Motion, and includes the exhibits attached to each motion.  Like the Reproduced Record, the pagination in the Supplemental Reproduced Record does not comply with Pa.R.A.P. 2173 (requiring "any supplemental reproduced record shall be numbered separately in Arabic figures and not in Roman numerals:  **(Footnote continued on next page…)**

2

Additionally, the Staffieris contend that following its acquisition of the Community, the Association maintained the embankment and fence for approximately 21 years. (*Id.* at 691.)

To facilitate access to the homes on Sackville Mills Lane, the Association holds a 33-foot-wide easement (Access Easement), most of which comprises Sackville Mills Lane. (R.R. at 51, 124.) In September 2021, the Association retained an engineering firm to survey the land surrounding Sackville Mills Lane to clarify the location of the Access Easement and the property line between the Community and the Briarcrest Neighbors (Survey). (*Id.* at 124, 130.) Following the completion of the Survey, the Association "met with surveyors, township personnel[,] and attorneys to understand the data." (*Id.* at 124.) The results of the Survey showed that the Access Easement "is located 16.5 [feet] from either side of the center of Sackville Mills [Lane]." (*Id.*) Additionally, the Survey showed that the property line between the Community and the Briarcrest Neighbors is the center point of Sackville Mills Lane. (*Id.* at 130.) Thus, one half of the Access Easement lies on land owned by the Association, while the other half lies on land owned by the Briarcrest Neighbors.

The Survey further revealed that the fence erected by the original builder of the Community lies beyond the Access Easement and solely on land owned by the Briarcrest Neighbors. (*Id.* at 124.) Consequently, in July 2022, the Association notified the Staffieris that it "will not be maintaining the fence or the landscaping surrounding the fence." (*Id.*) Subsequently, the Staffieris filed this action against the Association in the trial court, alleging among other things that the Association

---

thus 1, 2, 3, etc., . . . followed in any supplemental reproduced record by a small b, thus 1b, 2b, 3b, etc.").

3

breached a contractual obligation to maintain the fence and the entirety of the embankment and seeking mandatory injunctive relief.

Following a series of preliminary objections, amended complaints, and discovery, in December 2023, the Staffieris filed their Motion, asserting that they are entitled to summary judgment because the Association breached its contractual obligation to maintain the fence and embankment arising out of the following documents: (1) the First Restated and Amended Declaration of Covenants, Easements, and Restrictions (Declaration of CERs); (2) the Deed of Conveyance for Common Areas from the original builder to the Association (Conveyancing Deed); (3) the Final Phase V Subdivision Plan (Subdivision Plan); and (4) the Phases IV and V Development Agreement (Development Agreement). The Staffieris further argued that the business judgment rule in Section 5303 of the Uniform Planned Community Act (UPCA), 68 Pa.C.S. § 5303, does not protect the Association from the entry of a judgment as a matter of law against it because the Association acted in bad faith in refusing to maintain the fence and embankment. Thus, the Staffieris argued that they are entitled to mandatory injunctive relief as a matter of law.

The Association filed a Response in Opposition to the Staffieris' Motion, as well as its Cross-Motion. In its Cross-Motion, the Association argued that none of the documents relied upon by the Staffieris impose upon the Association an obligation to maintain, repair, or replace the fence and portions of the embankment, which are located outside of the Community and on the Briarcrest Neighbors' property. Additionally, the Association contended that its decision to not maintain the fence and embankment comports with the business judgment rule contained in Section 5303 of the UPCA. Therefore, the Association argued that it is entitled to a judgment as a matter of law.

4

The trial court denied the Staffieris' Motion and granted the Association's Cross-Motion, concluding that the Staffieris did not establish the Association had a contractual duty to maintain the embankment and fence. The trial court summarized its reasoning as follows:

> [T]here is no evidence in the record showing that any of the asserted documents—the Declaration of CERs, the Conveyancing Deed, the Subdivision Plan, and the Development Agreement—were violated by the [Association]. Moreover, the bank and fence rests on property owned by the Briarcrest [] [N]eighbors. Additionally, the road itself is not obstructed by the alleged disrepair of the bank and fence. Finally, requiring the Association to repair and maintain the bank and fence positioned on property it does not own would not constitute narrowly tailored relief as [the Staffieris] have not provided adequate evidence indicating that the all-weather turn-around for emergency vehicles is impacted by the Association's decision to stop maintaining and repairing the bank and fence.

(Trial Court's Order at 5.) The trial court further concluded that the business judgment rule protected the Association because "[t]here is no evidence that suggests that the actions of the [Association] and [its] reliance on the [Survey] or the information [it] received from the surveyors, township personnel, and attorneys constitutes fraud, bad faith, gross mismanagement, or unlawful conduct such that the [trial] [c]ourt must interfere." (*Id.* at 14.) For those reasons, the trial court granted summary judgment in the Association's favor.

The Staffieris now appeal to this Court.

## II.  DISCUSSION[3]

### A. *The Governing Documents*

To determine whether the Association has a contractual duty to maintain the fence and embankment, we begin our analysis by reviewing the following governing documents:  (1) the Declaration of CERs; (2) the Conveyancing Deed; (3) the Subdivision Plan; and (4) the Development Agreement.

### 1.  Declaration of CERs

First, the Staffieris argue the trial court erred in concluding that the fence and embankment are not "common areas" under the Declaration of CERs and, thus, the Association does not have a contractual obligation to maintain the fence and embankment.  (Staffieris' Brief (Br.) at 29-30, 49-51.)  According to the Staffieris, the fence and embankment are "Controlled Common Areas and Facilities," which means the Association is contractually obligated to maintain them and cannot dispose of them.  (*Id.* at 30, 49-50 (citing Declaration of CERs §§ 1.1(v), 3.11).)  The Staffieris also contend that the Association's refusal to maintain the fence and embankment violates Section 4.26(11) of the Declaration of CERs, which permits the Association to "modify the Common Areas and Facilities, in accordance with this Declaration [of CERs] and the [Planned Residential Development (PRD)] Plan."  (*Id.* at 51 (emphasis removed) (quoting Declaration of CERs § 4.26(11)).)  Finally, the Staffieris argue that the Association is required to maintain the fence and embankment under Article V of the Declaration of CERs because it is required to

---

[3] This Court's "standard of review on appeal from the grant or denial of summary judgment is de novo, and our scope of review is plenary."  *Clean Air Council v. Sunoco Pipeline L.P.*, 185 A.3d 478, 485 (Pa. Cmwlth. 2018) (citation omitted).  "Our review is limited to determining whether the trial court committed an error of law or abuse of discretion."  *Id.* (citation omitted). "Summary judgment is only appropriate where, upon examination of the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is clearly entitled to a judgment as a matter of law."  *Id.* at 485-86 (citation omitted).

maintain free ingress and egress to the Staffieris' property. (*Id.* at 24, 26-28 (citing Declaration of CERs §§ 5.3(a), (c), 5.5, 5.8).) In response, the Association argues that the Declaration of CERs in no way imposes a duty upon the Association to maintain the fence and embankment.

To determine whether the fence and embankment are "Controlled Common Areas and Facilities," we must first determine whether they are "Common Areas of Facilities." (*See* Declaration of CERs § 1.1(v) ("'Controlled Common Areas and Facilities' means the portion or portions of the Common Areas and Facilities . . . .").) The Declaration of CERs defines "Common Areas and Facilities" as

> (i) all of the **Property** as described in Section 3.1[4] which is intended to be transferred to the Association on or before the date provided in Section 3.4 and any improvements thereon, (ii) any other **real property** and the **improvements thereon within the Community** at any time owned by or leased to the Association for as long as such ownership or leasehold continues, (iii) all **real estate**, or **components thereof**, **within the Community**, whether or not part of a Townhome, that are not owned by or leased to the Association, but which are to be maintained, improved, repaired, replaced, regulated, managed, insured or controlled by the Association pursuant to this Declaration or any other agreement binding on the Association, and (iv) [] any **fixture**, **equipment** or other **personal property** which is owned by or leased to the Association, or which is to be maintained, improved, repaired, replaced, regulated, managed, insured or controlled by the Association and which is related to any of the foregoing. Common Areas and Facilities includes, without limitation, the entranceway into the Community from Brookhaven Road, Sackville Lane (subject to the rights and duties of others therein), all streets, service roads, street lights, driveways, walkways and pathways within the Community,

---

[4] In relevant part, Section 3.1 of the Declaration of CERs describes "Property" as "compris[ing] [] two basic components, the Units and the Common Areas and Facilities, together with appurtenant rights, including . . . the Access Easement. The part of the Property comprising the Common Areas and Facilities . . . is all of the Property together with the rights in . . . the Access Easement." (Declaration of CERs § 3.1.) In turn, Section 1.1(a) of the Declaration of CERs defines "Access Easement" as "the easement for use of Sackville Lane, in common with property owners abutting the west side of Sackville Lane." (*Id.* § 1.1(a).)

7

group mailboxes adjacent to streets or walkways, the Bridge, pipes and any other parts of sanitary sewer collection system outside of the Townhomes, the Pump Station and Force Main, the storm water system including any pipes, culverts or other facilities, any and all water, electricity, TV cable, telephone, gas and any other service or supply lines, pipes, equipment and systems which are owned by Association or held by the Association under an easement or which are to be maintained, repaired and replaced by the Association and which are located within the Community outside of any Townhome or Lot (but not those to be owned or maintained by the applicable utility, service or supply company or other third Person), and all other portions of the Property not included within any Lot and any improvements, betterments or facilities constructed thereon as required by the PRD Plan or pursuant to the decision of the Association. Common Areas and Facilities also includes the exterior of the Townhomes, as Controlled Common Areas and Facilities, to the extent that under this Declaration the Association is responsible for the maintenance thereof.

(*Id.* § 1.1(p) (emphasis added).) If an area falls within the definition of "Common Areas and Facilities," then it may also fall within the definition of "Controlled Common Areas and Facilities," which states:

"Controlled Common Areas and Facilities" means the portion or portions of the Common Areas and Facilities, whether or not part of a Unit, that are not to be owned by or leased to the Association, but are to be maintained, repaired, improved, replaced, regulated, managed, insured or controlled by the Association, including, without limitation, (i) the exterior components of the Townhomes with respect to which the Association has responsibilities under the Chart and under Article VII, (ii) after the dedication thereof to the Township, the Pump Station and Force main and the sewer trunk line of which they are part, and (iii) any other facility or improvement which the Board hereinafter determines fits within the above definition of Controlled Common Areas and Facilities.

(*Id.* § 1.1(v).)

Here, we conclude that the embankment and fence do not fall within the definition of "Common Areas and Facilities." The Staffieris rely on the third

8

definition of "Common Areas and Facilities" to show that the fence and embankment are "Common Areas and Facilities," despite being on real estate "not owned by or leased to the Association." (Staffieris' Br. at 50 (quoting Declaration of CERs § 1.1(p)(iii)).) However, the Staffieris' reliance on this definition is misplaced because the fence and a portion of the embankment are not located "within the Community." (*See* Declaration of CERs § 1.1(p)(iii) (defining "Common Areas and Facilities" as "real estate, or components thereof, **within the Community**") (emphasis added).) Rather, the record establishes that the fence and a portion of the embankment are located on property owned by the Briarcrest Neighbors and beyond the Access Easement.[5] (*See* R.R. at 124; S.R.R. at 690.) Indeed, the Staffieris appear to acknowledge this fact, as they requested the Association pursue a prescriptive easement for the land on which the fence and embankment sit. (*See* R.R. at 118-23 (emails from the Staffieris to the Association requesting that the Association pursue a prescriptive easement).) Therefore, the fence and a portion of the embankment are outside of the Community and, accordingly, do not fall within any definition of "Common Areas and Facilities." (*See* Declaration of CERs § 1.1(p).) Consequently, the fence and a portion of the embankment are also not "Controlled Common Areas and Facilities." (*Id.* § 1.1(v).)

Because the fence and a portion of the embankment are neither "Common Areas and Facilities" nor "Controlled Common Areas and Facilities," the Staffieris' arguments regarding Sections 3.11 and 4.26(11) of the Declaration of CERs are misplaced because these sections are inapplicable. (*See* Declaration of CERs § 3.11 ("The Common Areas and Facilities may be disposed of . . . by the Association . . .

_____

[5] A portion of the embankment is located within the Access Easement, (*see* R.R. at 1-2), and, thus, falls within the definition of "Common Areas and Facilities," (*see* Declaration of CERs § 1.1(a), 3.1).

9

only . . . . The Controlled Common Areas and Facilities may not be disposed of by the Association . . . ."); *id.* § 4.26(11) ("Subject to the provisions of this Declaration [of CERs], . . . [the] Association acting by its Board, may . . . modify the Common Areas and Facilities . . . .").) Accordingly, Sections 3.11 and 4.26(11) of the Declaration of CERs also do not require the Association to maintain the fence and the portion of the embankment located outside of the Community.

Additionally, the Staffieris contend that Sections 5.3(a), 5.3(c), 5.5, and 5.8 of the Declaration of CERs require the Association to maintain the fence and embankment because the Association is required to maintain free ingress and egress to their property through the Access Easement. We disagree. The Declaration of CERs requires the Association to provide for free ingress and egress **through the Community**. (*See* Declaration of CERs §§ 1.1(a), 5.1(a), (c), 5.3(a)-(c), (f), 5.8 (discussing a right of way for access to the homes in the Community).) The Association fulfills this obligation by maintaining the Access Easement. However, as discussed above, the fence and a portion of the embankment are located **outside** of the Access Easement and on the Briarcrest Neighbors' property. Accordingly, the Association is not required to maintain the fence and the portion of the embankment outside of the Access Easement unless they in some way obstruct the Access Easement, and there is no evidence of that in the record.

Therefore, the trial court properly concluded that the Declaration of CERs does not obligate the Association to maintain the fence and embankment. We reiterate, however, that the Association **is** required to maintain any portion of the embankment that falls **within** the Access Easement in accordance with the Declaration of CERs. (*See* Declaration of CERs §§ 1.1(p), 3.1.)

2. Conveyancing Deed

Second, the Staffieris argue the trial court erred in concluding the Conveyancing Deed does not require the Association to maintain the fence and embankment. The Staffieris contend that Section (c)(v) of the Conveyancing Deed obligates the Association to maintain the fence and embankment because they are located within the common area of the Community and the Access Easement. (*See* Staffieris' Br. at 20-21.) The Staffieris also assert that Sections (c)(v) and (i) of the Conveyancing Deed obligate the Association to maintain the fence and embankment because they encroach upon land owned by the Briarcrest Neighbors and an access easement contained in the Subdivision Plan. In opposition, the Association argues that the Conveyancing Deed does not obligate the Association to maintain the fence and embankment because they are located on the Briarcrest Neighbors' property and could not be conveyed by the original builder of the Community to the Association.

The Conveyancing Deed transferred the Community from S M, L.P. (Grantor) to the Association (Grantee), subject to certain easements, restrictions, covenants, agreements, and plans of record, including those contained in Sections (c)(v) and (i). Section (c)(v) of the Conveyancing Deed states:

(c) The Declaration [of CERs], and all of the easements, covenants and restrictions provided for in the Declaration [of CERs], and any easements created pursuant to the [Declaration of CERs], all on the terms, conditions, limitations and restrictions therein provided, including, without limiting the generality of the foregoing, the following:

. . . .

(v) The easements reserved in the Declaration [of CERs] to Grantor, its successors and assigned, as Declarant under the Declaration [of CERs], to enter upon the Premises as needed to carry out any obligations with respect to certain site

11

improvements that Grantor might have to [Nether Providence] Township under the PRD plan, the development agreements between Grantor and [Nether Providence] Township for each of the phases of the Development, any maintenance bonds in favor of [Nether Providence] Township, or as otherwise requested by [Nether Providence] Township, or to carry out any other obligations of Declarant under the Declaration [of CERs].

(Conveyancing Deed § (c)(v).) Section (i) of the Conveyancing Deed provides:

The four Development Agreements between Grantor and [Nether Providence] Township . . . . However, both the unfilled rights and unperformed remaining development obligations, if any, of Grantor thereunder still to be enjoyed or performed are reserved to Grantor and shall be retained, enjoyed and performed by Grantor; but not the continuing duties of Grantee, as acknowledged and confirmed by Grantee under paragraph (g) above, for the operation, maintenance, repair and, when needed, the replacement or reconstruction of the Premises and all the improvements, facilities and equipment therein, subject to the exceptions stated in such paragraph (g) . . . .

(*Id.* § (i).)

Neither of these provisions obligate the Association to maintain the fence and embankment. By its plain language, Section (c)(v) of the Conveyancing Deed pertains only to the rights of Grantor to enter the Community; that provision does **not** apply to the Staffieris. (*See* Conveyancing Deed § (c)(v).) Even if Section (c)(v) pertained to the Staffieris, it only applies to "[t]he easement . . . to enter upon **the Premises**." (*Id.* (emphasis added).) As discussed above, the fence and a portion of the embankment are located outside of the Community and, thus, outside of the Premises. (*See id.* at 1 (defining "Premises" as the property conveyed in the Conveyancing Deed).) For that same reason, Section (i) of the Conveyancing Deed does not obligate the Association to maintain the fence and the portion of the embankment beyond the Access Easement because that provision only places upon

12

the Association duties "for the operation, maintenance, repair and, when needed, the replacement or reconstruction of **the Premises** and all the improvements, facilities and equipment **therein**." (*Id.* § (i) (emphasis added).)

The Staffieris' argument that Sections (c)(v) and (i) create an easement for encroachment such that the Association is required to maintain the fence and embankment is also misplaced. Although the Staffieris do not cite any law establishing an easement for encroachment in their appellate brief, Section 5126 of the UPCA, 68 Pa.C.S. § 5216, provides for easements of encroachment in planned communities as follows:

> To the extent that any unit or common element encroaches on any other unit or common element, a valid easement for the encroachment exists. The easement does not relieve a unit owner of liability in case of the unit owner's willful misconduct nor relieve a declarant or any contractor, subcontractor or materialman or any other person of liability for failure to adhere to the plats and plans.

68 Pa.C.S. § 5216. However, Section 5126 of the UPCA does not establish an easement for encroachment in this case. As discussed above, the fence and embankment are not a common element of the Community. Moreover, even if the fence and embankment were a common element of the Community, they do not encroach on another unit or common element of the Community. Therefore, the fact that the fence and embankment encroach upon the Briarcrest Neighbors' property does not provide the Staffieris easement rights such that the Association is required to maintain the fence and embankment under the Conveyancing Deed.[6]

---

[6] Because the fence and a portion of the embankment are located beyond the Access Easement and, thus, encroach upon the Briarcrest Neighbors' property, the Association may have a prescriptive easement for that land. *See Gehres v. Falls Township*, 948 A.2d 249, 251 (Pa. Cmwlth. 2008) ("In Pennsylvania, a prescriptive easement is created by adverse, open, notorious, **(Footnote continued on next page…)**

13

Therefore, we conclude that the Conveyancing Deed does not obligate the Association to maintain the embankment and fence.

### 3. Final Phase V Subdivision Plan

Third, the Staffieris argue the trial court erred in concluding that the Subdivision Plan does not require the Association to maintain the fence and embankment. Because the Subdivision Plan contains an access easement required by Nether Providence Township Resolution No. 99-3 (Resolution No. 99-3), titled the Sackville Mills Lane Easement Note, the Staffieris argue that the Association is required to maintain the fence and embankment as a screen/buffer between the Community and the Briarcrest Neighbors. (Staffieris' Br. at 21-22, 44.) The Staffieris also contend that the Sackville Mills Lane Easement Note requires the Association to maintain the fence and embankment to ensure emergency vehicles can access Sackville Mills Lane. (*Id.* at 12, 17-18, 21, 37-38.) In response, the Association argues "the Sackville Mills Lane Easement Note . . . merely reiterates the existence of the Access Easement." (Association's Br. at 28.) Thus, in its view, the Association is only required to maintain Sackville Mills Lane itself, not the fence and embankment located outside of the road and Access Easement.

In the Subdivision Plan, the Sackville Mills Lane Easement Note provides:

> It is understood that the neighboring residents of Rose Valley, whose property backs up to the extension of Sackville Mills Lane (northbound from the intersection of Sackville Mills Lane and Dundee Mills Lane), will have the right to access the extension of Sackville Mills Lane for

_____

continuous and uninterrupted use of land for a period of 21 years."). Although the Staffieris previously requested the Association pursue a prescriptive easement for the land on which the fence and embankment sit, the Staffieris have not argued to this Court that the Association has, or is required to pursue, a prescriptive easement in the fence and embankment such that it is required to maintain them. Therefore, we will not decide that issue.

14

access to their property. They will not be required to share in the maintenance of Sackville Mills Lane.

(Subdivision Plan; R.R. at 3-4.) Based on the plain language of the Sackville Mills Lane Easement Note, it is unclear whether the easement applies to the homeowners located in the Community (titled "The Mills at Rose Valley"), as the Association and the trial court conclude, or to the Briarcrest Neighbors (who reside in Rose Valley Township), as the Staffieris conclude. Either way, the Sackville Mills Lane Easement Note does not obligate the Association to maintain the fence and embankment.

First, nowhere in the Sackville Mills Lane Easement Note does it require the Association to maintain the fence and embankment as part of a screen/buffer between the Community and the Briarcrest Neighbors. Second, if the Sackville Mills Lane Easement Note applies to the Staffieris, then it is merely a reiteration of the Access Easement discussed above. If the Sackville Mills Lane Easement Note applies to the Briarcrest Neighbors, then it merely permits the Briarcrest Neighbors to use Sackville Mills Lane to reach their property and states that they are not required to share in the maintenance of the road, of which half is located on their property. In both cases, the Association is not obligated to maintain the fence and a portion of the embankment because they are located beyond the Access Easement and Sackville Mills Lane itself.

Therefore, we conclude that the Subdivision Plan does not obligate the Association to maintain the embankment and fence.

4. Phases IV and V of the Development Agreement

Finally, the Staffieris argue the trial court erred in concluding the Development Agreement does not impose upon the Association an obligation to

15

maintain the fence and embankment. Specifically, the Staffieris contend the Development Agreement requires the Association to maintain the fence and embankment as a screen/buffer between the Community and the Briarcrest Neighbors because the Development Agreement incorporates Resolution No. 99-3. Additionally, the Staffieris assert that the Development Agreement requires the Association to maintain the fence and embankment as part of the required "all-weather turn-around" for emergency vehicles. (Staffieris' Br. at 35-36 (citing article III, section 16 of the Development Agreement).) The Staffieris posit that the Association's "abandonment" of the fence and embankment caused the required all-weather turn-around to be "obliterated" by 50%.[7] (*Id.* at 28, 38.) In opposition, the Association argues that "[n]othing in the Development Agreement binds the Association to maintain the embankment and fence on the [Briarcrest] Neighbors' [p]roperty." (Association Br. at 31.)

The Development Agreement comprises the final two phases of the PRD Plan between Nether Providence Township and Grantor and, thus, the Association. (*See* Development Agreement at 1-2.) Although the fence and embankment are not explicitly mentioned in the Development Agreement, the Staffieris assert that Resolution No. 99-3, which is incorporated into the Development Agreement, provides the source for the Association's obligation to maintain the fence and

---

[7] Following the Association's decision to not maintain the fence and embankment, one of the Briarcrest Neighbors tore down the original fence and replaced it with a taller fence located closer to the boundary line of the Access Easement. The Staffieris contend that the new fence is now located only 4.5 feet from the edge of Sackville Mills Lane and at the boundary line of the Access Easement. (Staffieris' Br. at 38.) Because the Briarcrest Neighbor replaced approximately 50% of the original fence, the Staffieris argue the Briarcrest Neighbor obliterated 50% of the required all-weather turn-around for emergency vehicles. (*Id.*) The Staffieris assert this occurred as a direct result of the Association's actions and, therefore, sought mandatory injunctive relief requiring the Association to remove the new fence. (*Id.* at 14, 28, 57.)

embankment as a screen/buffer between the Community and the Briarcrest Neighbors. However, Resolution No. 99-3 is not included in the record before this Court; therefore, we cannot consider its alleged contents. *See Pane v. Indian Rocks Prop. Owners Ass'n, Inc. of Ledgedale*, 167 A.3d 266, 273 (Pa. Cmwlth. 2017) ("This Court is prohibited from reviewing documents outside the record certified by the lower court."); *Allen v. Thomas*, 976 A.2d 1279, 1282 (Pa. Cmwlth. 2009) ("[A]n appellate court cannot consider anything that is not part of the record.").

Additionally, as the Staffieris note, article III, section 16 of the Development Agreement requires the Association to maintain an all-weather turn-around for emergency vehicles on Sackville Mills Lane because it is a dead-end road without a cul-de-sac. (Development Agreement art. III, § 16.) According to the Staffieris, this requirement obligates the Association to maintain the fence and embankment. We disagree.

It is through the Access Easement that the Association fulfills its requirement to provide an all-weather turn-around for emergency vehicles. Unless the fence and embankment in some way obstruct the Access Easement, the Association is not required to maintain the fence and the portion of the embankment located outside of the Access Easement. Further, as the trial court explained:

> [I]t is not apparent how the existence, let alone maintenance, of the bank and fence affects the all-weather turn-around facility for emergency vehicles. As [the Staffieris] note in their Motion, the [original] builder's purpose in creating the bank and fence were for aesthetic and privacy reasons. *See* Mot. at 10 (explaining that the "bank . . . was required due to elevation differences between the abutting of" the four single home properties in the Community and the three Briarcrest Drive properties and that the "six-foot-high stockade box wood fence the builder installed at the top of the builder excavated bank create[d] an aesthetic privacy buffer between the two neighboring communities"). Even if all of the Briarcrest [] [N]eighbors followed the [one Briarcrest Neighbor] in building a ten-foot-fence closer to

17

Sackville Mills Lane, there is no evidence showing that the road itself is not wide enough for an emergency vehicle to turn around at the dead end.

(Trial Court's Order at 11-12; *see also* S.R.R. at 690 (Amended Complaint) ("At the time the [] [C]ommunity was under development[,] the . . . Briarcrest [Neighbors] were given the option by the [original] builder to install a privacy hedge or six-foot high privacy fence on their property parcels at the builder's expense[.]").) Accordingly, we conclude that the Development Agreement does not require the Association to maintain the fence and embankment as part of its obligation to provide an all-weather turn-around for emergency vehicles.[8]

### B. Business Judgment Rule

Next, the Staffieris argue the trial court erred in concluding that the Association's refusal to maintain the fence and embankment did not violate the business judgment rule in Section 5303 of the UPCA. According to the Staffieris, the Association violated the business judgment rule because it engaged in "bad faith tactics," as "evidenced through an intentional lack of transparency, as well as misleading and false information, and lack of pertinent information provided to [the Staffieris], [the Community's] single homeowners, and the adjoining [Briarcrest Neighbors] in regard to this matter." (Staffieris' Br. at 62.) The Staffieris cite

---

[8] The Staffieris further argue that the Association violated Section 5106(c)(4) of the UPCA, which states that the "[c]onstruction of any structure or building on any unit or common facility shall be subject to the provisions of any zoning subdivision, land development, building code or other real estate law, ordinance or regulation." 68 Pa.C.S. § 5106(c)(4). The Staffieris argue the Association violated this section when it abandoned the fence and embankment because that decision allowed one of the Briarcrest Neighbors to build a new fence closer to the Access Easement. However, the Staffieris do not direct this Court to a "provision[] of any zoning subdivision, land development, building code or other real estate law, ordinance or regulation[]" that the Association allegedly violated. *See* 68 Pa.C.S. § 5106(c)(4). Therefore, we cannot conclude that the Association violated Section 5106(c)(4) of the UPCA.

various alleged actions of the Association to support their claim of bad faith. (*See id.* at 62-72.) In response, the Association argues the business judgment rule protects the Association because "the record contains no evidence of bad faith on the Association's part." (Association's Br. at 33.)

In relevant part, Section 5303(a) of the UPCA provides:

> Except as provided in the declaration, in the bylaws, in subsection (b) or in other provisions of this subpart, the executive board may act in all instances on behalf of the association. In the performance of their duties, the officers and members of the executive board shall stand in a fiduciary relation to the association and shall perform their duties, including duties as members of any committee of the board upon which they may serve, in good faith; in a manner they reasonably believe to be in the best interests of the association; and with care, including reasonable inquiry, skill and diligence as a person of ordinary prudence would use under similar circumstances. . . . . In performing any duties, an officer or executive board member shall be entitled to rely in good faith on information, opinions, reports or statements . . . in each case prepared or presented by any of the following:
>
> . . . .
>
> (2) Counsel, public accountants or other persons as to matters which the officer or executive board member reasonably believes to be within the professional or expert competence of that person.
>
> . . . .
>
> An officer or executive board member shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause his reliance to be unwarranted. The executive board and its members shall have no liability for exercising these powers provided they are exercised in good faith, in the best interest of the association and with care in the manner set forth in this section.

68 Pa.C.S. § 5303(a). Accordingly, this Court will not interfere with the Association's refusal to maintain the fence and embankment so long as the decision

19

was made "in good faith; in a manner [it] reasonably believe[d] to be in the best interests of the [A]ssociation; and with care, including reasonable inquiry, skill and diligence as a person of ordinary prudence would use under similar circumstances." *Id.*; *see also Logans' Reserve Homeowners' Ass'n v. McCabe*, 152 A.3d 1094, 1097 n.6 (Pa. Cmwlth. 2017).

Here, based on our review of the record, we agree with the trial court that the Association did not act in bad faith. The record shows that the Association "gather[ed] data on the agreement/development site maps and township permits" and "met with surveyors, township personnel and attorneys to understand the data." (R.R. at 124.) The Association's stated goal was to clarify the rights of the Association and its neighbors to "reduce conflict and [] improve [its] relationship with [its] neighbors." (*Id.*) Accordingly, as a result of the Survey, the Association determined that it would no longer maintain the fence and a portion of the embankment because they are located solely on property owned by the Briarcrest Neighbors. (*Id.*) This decision fully comports with the Association's stated goal of reducing conflict and improving its relationship with its neighbors. (*See id.*) Therefore, we discern no bad faith on the part of the Association such that a court must interfere.[9]

---

[9] The Staffieris further argue that the business judgment rule does not protect the Association because it did not follow the proper procedure for amending the Declaration of CERs before it decided to no longer maintain the fence and embankment in violation of Section 5219(a)(1) of the UPCA. We disagree. Pursuant to Section 5219(a)(1) of the UPCA,

(1) The declaration, including the plats and plans, may be amended only by vote or agreement of unit owners of units to which at least:

(i) 67% of votes in the association are allocated; or

**(Footnote continued on next page…)**

20

Accordingly, the trial court properly concluded that the Association is protected by the business judgment rule.

## C. Injunctive Relief

The Staffieris also argue the trial court erred in concluding they did not establish their entitlement to mandatory injunctive relief for the following reasons. First, the Staffieris contend they have a clear right to injunctive relief because the Association violated the Declaration of CERs, Conveyancing Deed, Subdivision Plan, and Development Agreement. Second, the Staffieris assert that the Association's actions have caused them irreparable harm, which cannot be compensated through an award of damages, because the Association extinguished the Staffieris' "deeded property rights" and diminished the market value of their home. (Staffieris' Br. at 56.) Finally, the Staffieris contend that they will suffer

(ii) a larger percentage of the votes in the association as specified in the declaration; or

(iii) a smaller percentage of the votes in the association as specified in the declaration if all units are restricted exclusively to nonresidential use.

68 Pa.C.S. § 5219(a)(1).

Here, even if the Association amended the Declaration of CERs following the results of the Survey, the Association is permitted to amend the Declaration of CERs "without the approval of the unit owners" to "cure an ambiguity" so long as the Association received "an opinion from legal counsel who is independent from the declarant to the effect that the proposed amendment is permitted by the terms of this subsection." 68 Pa.C.S. § 5219(f); *see also Belleville v. David Cutler Grp.*, 118 A.3d 1184 (Pa. Cmwlth. 2015) (discussing "technical corrections" under Section 5219(f) of the UPCA). The goal of the Survey was to cure the ambiguity regarding the location of the Access Easement and property line between the Community and the Briarcrest Neighbors. Additionally, the Association met with attorneys to understand the data from the Survey and relevant documents binding the Association. Although the record does not show whether those attorneys are independent of the declarant or provided an opinion regarding Section 5219(f) of the UPCA, the Staffieris do not argue that the Association's actions did not comport with this subsection. Therefore, we cannot conclude that the Association violated Section 5219(a)(1) of the UPCA.

21

further harm if the injunctive relief is not granted because the Association's actions have "destroy[ed] [their] enjoyment of their common area surroundings and negatively impact[ed] [their] mental well-being." (*Id.* at 57.)

As an initial matter, "[a]n injunction is a court order that can prohibit or command virtually any type of action." *Big Bass Lake Cmty. Ass'n v. Warren*, 950 A.2d 1137, 1144 (Pa. Cmwlth. 2008). "It is an extraordinary remedy that should be issued with caution and 'only where the rights and equity of the plaintiff are clear and free from doubt, and where the harm to be remedied is great and irreparable.'" *Id.* (quoting 15 STANDARD PENNSYLVANIA PRACTICE 2D, § 83:2 (2005)). A mandatory injunction is the rarest form of an injunction, as it is the "extreme" remedy of commanding an affirmative act. *Id.* at 1145 (citation omitted). "The case for a mandatory injunction must be made by a very strong showing, one stronger than that required for a restraining-type injunction." *Id.* (citations omitted).

To meet the requirements for injunctive relief, a plaintiff must prove "a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested." *Id.* at 1044 (citation omitted). Even when these elements have been met, "the court must narrowly tailor its remedy to abate the injury." *Id.* at 1144-45 (citation omitted). The power to grant or refuse injunctive relief "rests in the sound discretion of the court under the circumstances and the facts of the particular case." *Id.* at 1045 (quoting *Rick v. Cramp*, 53 A.2d 84, 88 (Pa. 1949)). "The action of the court on an injunction request may be set aside but only where there has been a clear abuse of discretion." *Eagleview Corporate Ctr. Ass'n v. Citadel Fed. Credit Union*, 243 A.3d 764, 773 (Pa. Cmwlth. 2020) (quoting *Woodward Township v. Zerbe*, 6 A.3d 651, 658 (Pa. Cmwlth. 2010)).

Here, we conclude that the trial court correctly determined that the Staffieris did not establish the elements of a claim for mandatory injunctive relief. As discussed above, the Association is not obligated to maintain the fence and a portion of the embankment under the Declaration of CERs, Conveyancing Deed, Subdivision Plan, or Development Agreement. Therefore, the Staffieris do not have a clear right to mandatory injunctive relief to command the Association to take action to maintain the fence and embankment.

*D. Remaining Arguments*

Finally, the Staffieris assert that the trial court also erred in denying their Motion for the following reasons.

First, the Staffieris argue the trial court "erred in determining that [the Staffieris'] Pelsa Survey and [the Staffieris'] Experts Witness Appraisal Report by a Certified Appraiser . . . were not admissible for the [trial] [c]ourt's analysis." (Staffieris' Br. at 52.) The trial court, however, expressly stated in the Order that it did **not** rule on the admissibility of these reports, which were provided to the trial court for the first time as exhibits to the Staffieris' Motion. (Trial Court's Order at 12 n.12 ("The [trial] [c]ourt need not determine [the Pelsa Survey's] admissibility in the present Motion."); *id.* 14 n.13 ("The [trial] [c]ourt need not determine the Appraisal Report's admissibility at this time.").) Rather, the trial court stated that even if it had considered these reports, the outcome of the dispute would not change. (*Id.* at 12 n.12, 14 n.13.) Accordingly, we discern no error.

Second, the Staffieris argue that the trial court erred in relying on the Survey to reach its conclusion that the Association was not required to maintain the fence and embankment. According to the Staffieris, the Survey only clarified the location of the Access Easement and neglected to consider the Association's obligations

under the Subdivision Plan and Development Agreement. While the Survey may have considered the Association's obligations under various governing documents, the Survey confirmed what the Staffieris already acknowledged: The fence and a portion of the embankment are located outside of the Access Easement and, thus, the Community. (*See* R.R. at 124, 130 (results of the Survey); *id.* at 118-23 (the Staffieris' requests for the Association to pursue a prescriptive easement of the land upon which the fence and a portion of the embankment are located).) The Staffieris' own survey further clarified that the fence and a portion of the embankment are located outside of the Access Easement and the Community. (*See id.* at 1.) Therefore, the trial court did not err in relying on the Survey results to conclude that the Association had no obligation to maintain the fence and embankment.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's Order because there are no genuine issues of material fact, and the Association is entitled to a judgment as a matter of law.

_____
RENÉE COHN JUBELIRER, President Judge

24

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adria Charles Staffieri and Gary
Staffieri,
                     Appellants

             v.

The Board of Directors for the Mills
at Rose Valley Homeowner's
Association

:
:
:
:
:
:   No. 605 C.D. 2024
:
:
:
:
:

## **O R D E R**

    **NOW**, April 24, 2025, the Order of the Court of Common Pleas of Delaware County, dated April 30, 2024, is **AFFIRMED**.

 

_____
RENÉE COHN JUBELIRER, President Judge